EDWARD FERRIS'S ADM'RIX v. ELIZABETH PARKER, EX'RIX.

It was a general rule of the Spanish law, that donations between husband and wife were prohibited. To this rule there were some exceptions, viz: that it embraced only such gifts as would make the donor poorer and the donee richer; but the more important exception to the rule was, that the donation was valid if not revoked before the death of the donor. This revocation could be made by words or by acts, that is by an express declaration of the will of the donor or by an act *inter vivos*, or by will or other final disposition, or tacitly by selling or disposing in any other manner, of the subject of the gift.

Where a colonist, before the introduction of the common law, assigned his head-right certificate to a locator, and took from the latter a bond to locate the same and make a title to one-half thereof to his, the colonist's wife, and soon afterwards was heard to say that he had given one-half of his headright to his wife, and in 1847 was heard to speak of the land as the property of the wife, it was held that there was no sufficient evidence to establish a donation by the husband to the wife. But see the opinion.

Appeal from Walker. Proceeding commenced in the County Court by the appellee against the appellant to compel her to return a certain tract of land, parcel of the headright of Edward Ferris, her intestate, as a part of his estate. The plaintiff was the holder of an allowed and approved claim against the estate of Ferris. It was a bond, dated Sept., 1840, from Ferris to the plaintiff's testator, to convey him a portion, to be appraised, of his, Ferris's headright as soon as he should obtain a patent therefor, in consideration for a tract of land which the plaintiff's testator had sold to Ferris at two dollars per acre. The claim had been presented for $280 " or the land if title can be made," and was allowed in general terms. The other facts will be found in the opinion.

*W. A. Leigh*, for appellant. A husband could, under the civil law, make a donation to his wife *post nuptias*. (11 Tex. R. 515.) In that case the Court say that "where the husband intends to relinquish his right in the community pro-

perty and to transfer it to his wife, his act must be explicit and such as to leave no doubt of his intentions." By reference to the testimony, the Court will observe, that the intentions of Ferris were to give one-half of his headright league to his wife Lucy. Jesse W. Wilson says that in the fall of 1838 Ferris told him in the presence of his wife, that he had given it to her. Vann's testimony amounts to a recognition of said gift by Ferris in the years 1846 and 1847. Observe the allegations in petition in connection with the above testimony. "The petitioner further states that on the 5th February, 1838, "during the coverture of said Ferris and his wife Lucy, there was issued a certificate," &c., "that in February, 1838, said "Ferris, in consideration that Francis Slaughter would locate "and clear out said league of land and then convey to Lucy "one-half of it," &c. In the fall of 1838, said Ferris told witness Wilson, in presence of his wife Lucy, that he had given said half league to his wife Lucy. Is this not explicit? Does it not show beyond doubt, that he intended to transfer said gift to his wife Lucy? In the case of Hartwell v. Jackson, 7 Tex. R. 576, the Supreme Court say the husband may make a valid bill of sale or deed of gift to his wife, which will be enforced against his heirs.

In the case of Parker v. Chance, above referred to, the Court say that "the presumption of law is that property conveyed to the wife, belongs to the community." This is the correct position; and if so, cannot such a presumption be repelled by parol evidence? The appellant does not seek to contradict or change written evidence, but he seeks to repel a legal presumption.

*Yoakum & Branch*, for appellee.

HEMPHILL, CH. J. This case was once before appealed to this Court, (*vide* Parker, ex'trix, v. Chance and wife, adm'rs, 11 Tex. R. 513,) and it was then decided that the half league

of land (though the reconveyance from the executor of Slaughter was in the name of the wife) was community property, and consequently that it should have been included in the inventory of the estate of the husband, Edward Ferris, deceased. Lucy Ferris, the surviving wife and administratix, had refused to insert it in the inventory, on the ground that it was her separate property, by gift from her husband; and when the cause was remanded, she attempted to support the gift by evidence of verbal admissions of her husband to that effect.

One witness testified, that in the fall of the year, 1838, Edward Ferris, the husband, in the presence of his wife Lucy, informed him (the witness) that he had given the one-half of his league to his wife; and another witness proved that in 1847 he had heard him speak of the land as the property of his wife.

As the gift is claimed to have been made in 1838, we will consider,

1st. The provisions of the Spanish Code relative to donations between husband and wife, and

2d. Whether the evidence was sufficient to establish the fact of gift.

The general rule of the Spanish law, and in this particular it is identical with the Roman law, is that donations between husband and wife are prohibited.

The reasons given by the law and by jurists, for this prohibition, are

1st. That the affections which should unite the hearts of husband and wife, should not, so to speak, be made venal or be either acquired or preserved by presents.

2d. That the excessive love of one of the consorts, if not restrained, might induce him blindly to despoil himself of all his property, for the benefit of the other.

3d. That importunities and differences might be excited continually, so that one might be compelled to purchase from the other peace and domestic repose, at the cost of his property.

4th. That the resistance which one would make against

the solicitations of the other, for a gift, might occasion frequent separations and divorces.

To the rule prohibiting donations, there were some exceptions, viz: that it embraced only such gifts as would make the donor more poor and the donee more rich. Gifts, when they had no such effect, were allowed. For instance, a husband might, before acceptance, renounce an inheritance in favor of his wife, to which she had been substituted as heir, for the reason that although the wife derived an advantage from such renunciation, yet the husband did not part with any of his own property—the inheritance not having become his, as he had not accepted it.

But the more important exception to the rule was, that the donation was valid if not revoked before the death of the donor. This revocation could be made by words or by acts, that is, by an express declaration of the will of the donor or by an act "*inter vivos*," or by will or other final disposition, or tacitly by selling or disposing in any other manner of the subject of the gift. (L. 4, 5, 6, Tit. 11, Partidas 4; Escriche, *Diccionario*, *Verbo* DONACION ENTRE CONGUGES.)

If it be admitted that in this case there was a gift, yet it is obnoxious to all the exceptions of the law. It not only enriches the donee, to the impoverishment of the donor, but it was revoked in the lifetime of the latter, and especially was it revoked as to the demand of the appellee. This is founded on a purchase of five hundred acres of land, at two dollars per acre, from the husband, Edward Ferris, in 1840, to be satisfied out of this identical land, as soon as, in the language of the instrument, the said Fdward Ferris shall receive a patent from the Government for his own individual headright. It appears further, that the husband, in his lifetime, sold one thousand acres of the land to one B. F. Wright. The donation, then, if made, was revoked, at least so far as regards the claim of the appellee, which must be satisfied out of the land, if that be claimed, or if it be possible; and if not, then out of the pro-

ceeds, unless other rights should invervene, which do not appear of record.

But we are of opinion that the evidence was not sufficient to establish a gift. The certificate and land were originally community property. There was no evidence that the bond from Slaughter, to make title to the wife, was recorded, and the deed from the executor of Slaughter to the wife, was not recorded until 1849. These, if recorded, would not have been evidence of separate right in the wife. The presumption would still have been that the property belonged to the community. But, in conjunction with other circumstances, they might have given some indication that the wife intended to claim the property. But the first record is in 1849 (about nine years after this debt was contracted) and the first evidence that the property was claimed by the wife, was that given on the trial. There was no proof that the claim was notorious, or such as would give notice to creditors or purchasers. The whole consists of two declarations on the part of the husband, nine years intervening between them, with no evidence that his admissions went further than the witnesses. The subject matter of the gift also was land, and this could not, even under the laws of Spain, be transferred verbally, unless followed by possession, of which, in this case, there was no evidence.

Upon the whole we are of opinion that there was no sufficient evidence to establish the donation; and if there had been, that it was revoked by the acts of the donor, and can have no effect against the claim of appellee.

Judgment affirmed.